J-A22015-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JASON BROWN :
:
Appellant : No. 1031 WDA 2023

Appeal from the Judgment of Sentence Entered November 16, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002237-2021

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.: **FILED: October 28, 2024**

Jason Brown (Appellant) appeals from the judgment of sentence imposed following his non-jury convictions of one count each of third-degree murder, persons not to possess firearms, and possession of a firearm without a license.[1] We affirm.

The trial court thoroughly detailed the evidence presented at trial in its Pa.R.A.P. 1925(a) opinion:[2]

> The credible evidence … established that on February 8, 2021, at approximately 8:48 p.m., police officers from the City of Pittsburgh Bureau of Police were dispatched to 4407 Davison Street in the Lawrenceville neighborhood of the City of Pittsburgh

---

[1] 18 Pa.C.S.A. §§ 2502(c); 6105(a)(1); 6106(a)(1). We hereinafter collectively refer to Appellant's convictions of persons not to possess firearms and possession of a firearm without a license as "the firearms offenses."

[2] The trial judge who authored the Rule 1925(a) opinion, the Honorable Anthony Mariani, presided as the factfinder at Appellant's non-jury trial.

for a report of a female being shot in [a] vehicle.  Dispatch also advised that the female had crashed the vehicle into a utility pole[,] and a black male with dreadlocks was seen running from the vehicle.  Upon the arrival of police officers, it was observed that a red Ford Fiesta [(the Fiesta or the vehicle)] had crashed into a … utility pole in front of 4407 Davison Street.  The victim in this case, Katara Bray [(the victim)], was found with a gunshot wound to the side of her head.  Emergency medical personnel pronounced her dead at the scene.  Officers observed that the passenger door of the Fiesta was ajar.  Broken glass was observed on the ground next to the driver's front door, **consistent with gunshots being fired from inside the vehicle.**

While at the scene, police officers observed that both the driver['s] side **and front passenger side airbags** of the Fiesta had deployed.  Two nine millimeter [bullet] casings were found in the Fiesta.  **Recovered from the passenger side floorboard of the Fiesta was hospital discharge paperwork for [Appellant].**  Police also recovered from the vehicle two cell phones, one belonging to [the victim], and the other **belonging to [Appellant]**.  Police officers also found a latent fingerprint on the exterior passenger side of the door handle of the vehicle, **matching the [finger]print of [Appellant]**.

The autopsy of [the victim] disclosed that she sustained a contact wound to the right midline posterior skull[,] and a second contact wound [located] posterior right midline of the neck.  In common parlance, the gunshot wounds were below the right earlobe and in the right shoulder/neck area.  The manner of death was determined as homicide.

Trial Court Opinion, 1/24/24, at 2-3 (emphasis added).  The medical examiner who performed the victim's autopsy testified the victim's injuries were consistent with the shooter having been in the vehicle's front passenger seat at the time of the shooting.  *See* N.T., 8/23/22, at 15-16 (unpaginated).

The trial court detailed surveillance video evidence the Commonwealth presented at trial:

Surveillance video from [a tavern] showed a male running from the 4400 block of Davison Street. The male was **wearing a dark hooded sweatshirt, light colored pants** and a light-colored t-shirt under the sweatshirt or jacket. The male was also wearing **distinctive black and white shoes.** The hood of the sweatshirt was up and the video disclosed that **the male had dreadlocks hanging out of the hood.**

Surveillance audio/video from a … camera at a nearby residence disclosed that two gunshots could be heard at or near the time of the [in]cident. The audio portion of the video revealed a gunshot, a pause, a gunshot, a pause then a crash. [In the video, a] person **wearing *distinctive black and white shoes*, dark clothing and light-colored pants** can be seen fleeing the scene.

Additional surveillance footage from a Giant Eagle supermarket disclosed that [*earlier in the day*] **on February 8, 2021**, [Appellant, the victim,] and their daughter went to Giant Eagle…. [The victim] can be observed wearing the same clothes she was wearing when she was found deceased. [**Appellant**] **was wearing a dark hooded sweatshirt, light**[**-colored**] **pants and black and white shoes. His dreadlocks were hanging outside the hood of the sweatshirt.**

Trial Court Opinion, 1/24/24, at 4-5 (emphasis added).

The trial court summarized the trial testimony of the Commonwealth's eyewitnesses:

Brian Narr [(Brian)] testified at trial that he resided [at] 4407 Davison Drive. On February 8, 2021[,] around 8:50 p.m.[, Brian] was in his residence and heard [a] loud crash. He immediately went outside and observed that the [collision involving the Fiesta] occurred in front of his residence. [Brian] observed [the victim,] who appeared to be seriously injured. [Brian] also observed a **light-skinned black male with short dreadlocks** wearing a tight hat and[, Brian] believed[,] blue jeans. The male fled toward 45th Street. [Brian] provided detectives with video footage [taken from a residential surveillance] camera that recorded a portion of the events.

- 3 -

Jordan Narr [(Jordan)] testified that he was Brian['s] [] son and [that Jordan] was with [Brian] in their residence on February 8, 2021[,] around 8:50 p.m. At approximately that time, [Jordan] heard a loud crash. [Jordan] testified that he went outside with his father and he observed a male in the passenger side seat of the Fiesta reaching for something on the passenger side floor. [Jordan] observed the male grab a handgun, exit the Fiesta and run toward 45th Street. [**Jordan**] **described the male as a young**[,] **light-skinned black male**[, **who was**] **approximately 5'9" tall. The male had dreadlocks**[3] that came to his neck area and was wearing a winter tossle cap.

Chad Markle [(Markle)] testified that he resided at 4406 Davison Street[. O]n February 8, 2021[,] around 8:50 p.m.[, Markle] was in his residence with his wife. They heard a loud noise outside. [Markle] immediately looked through a window and observed the Fiesta crashed into the utility pole. He also observed someone fleeing the scene. [Markle] testified that the person was **wearing dark clothes and appeared to have dreadlocks.**

Adam Stroia [(Stroia)] testified that he resided at 4408 Davison Street[. O]n February 8, 2021[,] at approximately 8:50 p.m.[, Stroia] heard a large bang or crash. [Stroia] immediately opened his front door to see what happened and noticed the Fiesta crashed into a utility pole. He observed **a black male with dreadlocks and wearing dark clothing** fleeing the scene and running toward 45th Street.

Trial Court Opinion, 1/24/24, at 3-4 (emphasis and footnote added).

Finally, the trial court described the police investigation:

During the course of the investigation, police learned that [the victim] had a child with [Appellant].[4] Lanice Bowers [(Ms. Bowers), the victim's] close friend, told police that **on the day of**

_____

[3] At the time of the murder, Appellant, a light-skinned black male, was 24 years old, 5'11" tall, and had dreadlocks. *See* Criminal Complaint, 2/25/21, at 1 (unpaginated); Commonwealth Ex. 46 (picture of Appellant taken shortly before the victim's murder).

[4] The victim had two other children with the sole defense witness in this case, Justin Brownfield (Brownfield). N.T., 8/29/22, at 75.

**the homicide,** [**the victim**] **thought that she was pregnant.** [Ms. Bowers testified that **the victim had stated she**] **did not want to be pregnant with** [**Appellant's**] **child.**[5]  Ms. Bowers also testified that around 7:30 p.m. on February 8, 2021 [(*i.e.*, **approximately *one hour* before the victim's murder**)], she was with [Appellant] and [the victim].  [Appellant] started begging [the victim] to drop him off somewhere.  [According to Ms. Bowers, the victim] did not want to take [Appellant] anywhere but after several minutes [of Appellant's repeated requests, the victim] agreed [to transport Appellant].  [The victim] and [Appellant] left the house together [and entered the Fiesta,] so [that the victim] could [drive Appellant] where he wanted to go.[6] **Ms. Bowers testified that when she saw** [**Appellant**] **that day**[,] **he was wearing a black hoodie**, a white t-shirt[,] gray or dark pants[,] and **his dreadlocks were in a ponytail.**

The Commonwealth also introduced a photograph of [Appellant] **wearing *distinctive black and white shoes* and holding a firearm** with a black handle and a silver frame.  The photograph was recovered from [the victim's] phone.  A forensic examination of [the victim's] phone indicated that the photograph was sent to her Facebook account from the Facebook account of "Hoova Jo" via Facebook Messenger on January 30, 2021[, nine days prior to the murder].  The "Hoova Jo" Facebook page contains multiple photographs of [Appellant].  The examination also revealed that [Appellant] and [the victim] exchanged other messages using these Facebook accounts.

---

[5] Ms. Bowers confirmed that the victim was sexually "active with both [] Brownfield and [Appellant] leading up to the timeframe of" the murder.  N.T., 8/29/22, at 56.  Ms. Bowers testified, "[Appellant] was the only [] person [the victim] was saying she wish[ed the baby] wasn't" his.  ***Id.***

[6] Ms. Bowers testified, "[**Appellant**] **was upset.**  He wanted to get wherever he was going."  N.T., 8/29/22, at 48 (emphasis added).  Ms. Bowers' testimony indicates no other person left with Appellant and the victim in the Fiesta.  ***Id.*** at 48-49; ***see also*** N.T., 8/23/22, at 35-36 (unpaginated) (testimony of police officer involved in the investigation that the Fiesta's back seats contained multiple items, and "[t]he way the items … in the backseat were placed, [the officer] really couldn't see any space that a person would be[]" able to fit).

[Appellant] was interviewed by homicide detectives [four days after the murder]. He denied responsibility for the homicide but he did acknowledge that he was with [the victim] just prior to the incident. [**Appellant**] **also acknowledged that he may have been the last person to see** [**the victim**] **alive**[,] and he feared he would be blamed for her murder. [Appellant] informed the detectives that he wanted to go to Greensburg, Pennsylvania, on February 8, 2021, to visit a lady friend and [the victim drove Appellant in her car and] dropped [Appellant] off in Lawrenceville so he could get a ride to Greensburg. When asked by detectives for the name and address of the person who was going to take him to Greensburg[,] or for the address of the lady friend, [Appellant] refused to provide an answer.

Trial Court Opinion, 1/24/24, at 5-6 (emphasis and footnotes added).

Approximately two weeks after the murder, police arrested Appellant and charged him with criminal homicide[7] and the firearms offenses. Appellant's non-jury trial commenced on August 22, 2022. At the close of the Commonwealth's case-in-chief, Appellant's counsel moved for judgment of acquittal on all counts. N.T., 8/29/22, at 63. Defense counsel claimed (a) the Commonwealth failed to prove Appellant's identity as the perpetrator beyond a reasonable doubt; and (b) the testimony of certain Commonwealth witnesses was conflicting. *Id.* at 64, 66. The trial court denied the motion for judgment of acquittal. *Id.* at 73. The court specifically found that the "Commonwealth [] produced sufficient evidence with regard to identification…." *Id.*

---

[7] 18 Pa.C.S.A. § 2501.

Appellant called Brownfield as his only witness. Brownfield testified he and the victim were separated at the time of her murder and had two children together. *Id.* at 75. Appellant introduced evidence of text messages Brownfield sent to the victim three days before her murder. *Id.* at 76. Brownfield conceded that in one of these messages, he stated he "hates [the victim's] guts." *Id.* He further conceded that the victim had filed a petition for protection from abuse (PFA) against Brownfield before her murder.[8] *Id.* at 77; *see also* Defense Ex. A (final PFA order concerning Brownfield).

Brownfield testified that at the time of the victim's murder, he was at his place of employment, located in West Virginia. *Id.* at 82. On cross-examination, Brownfield confirmed (a) he consented to a police search of his cell phone in connection with the murder investigation; and (b) at the time of the murder, Brownfield had short hair.[9] *Id.* at 85-86.

---

[8] The victim's mother, Tara Evans (Evans), testified that at the time of the murder, the victim had an active PFA order against Brownfield. N.T., 8/29/22, at 40; *see also id.* at 39-40 (Evans stating Brownfield had perpetrated domestic violence against the victim).

[9] Ms. Bowers testified that she had seen Brownfield in the days leading up to the murder, and his hairstyle "wasn't long." N.T., 8/29/22, at 61. Evans also testified she saw Brownfield and Appellant shortly before the murder. *Id.* at 31, 33. Evans stated Brownfield was "[c]lean cut. Hair short." *Id.* at 33. Whereas Appellant "had dread[lock]s a little bit pas[t] his shoulders." *Id.* at 31. Evans testified she could not recall the clothes Appellant was wearing on the day of the murder. *Id.* at 36.

After considering closing arguments, the trial court convicted Appellant of the above-mentioned charges.[10]  In rendering its verdict, the trial court stated in relevant part:

> I'm satisfied beyond a reasonable doubt as to identification.  The cumulation of all this evidence, circumstantial as it may be, nonetheless point[s] to [Appellant] and [Appellant] alone.  Even [Appellant's] own statement to the [police] was that he was the last person with [the victim] that [Appellant] knew of.

*Id.* at 131.

The trial court sentenced Appellant on November 16, 2022.  The court imposed an aggregate prison term of 26-52 years.  Appellant filed a post-sentence motion on November 21, 2022.  Appellant claimed, *inter alia*, the evidence "was insufficient as a matter of law to find [Appellant] guilty of any of the charges."  Post-sentence Motion, 11/21/22, ¶ 3(b).  The trial court denied the post-sentence motion on August 17, 2023,[11] without a hearing.

---

[10] The trial court found the evidence did not support a guilty verdict for first-degree murder.  N.T., 8/29/22, at 131-33.  The court concluded, "I do not believe the evidence rises to th[e] level" of establishing premeditation, "despite the fact that it certainly points that way."  *Id.* at 133.

[11] The trial court denied Appellant's post-sentence motion 269 days after it was filed.  Our Rules of Criminal Procedure mandate a trial court "**shall** decide [a] post-sentence motion, including any supplemental motion, **within 120 days** of the filing of the motion."  Pa.R.Crim.P. 720(B)(3)(a) (emphasis added).  Moreover, the trial court clerk of courts never entered an order deeming Appellant's post-sentence motion denied by operation of law after 120 days.  *Id.* ("If the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law.");  *see also* Pa.R.Crim.P. 720(B)(3)(c) ("When a post-sentence motion is denied by operation of law, the clerk of courts shall forthwith enter an order on behalf of the court….").

Appellant filed a notice of appeal on September 5, 2023, within 30 days of the trial court's order denying his post-sentence motion.[12] Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents a single issue for review:

> Was the evidence insufficient to support [Appellant's] convictions for third-degree murder and [the] firearm offenses because the evidence failed to establish that [Appellant] was the perpetrator?

Appellant's Brief at 3.

A sufficiency claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Packer***, 168 A.3d 161, 166 (Pa. 2017).

> When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed.

***Commonwealth v. Burns***, 765 A.2d 1144, 1148 (Pa. Super. 2020) (citations omitted). "[I]t is the fact-finder's province to weigh the evidence, determine

---

[12] The trial court's above-mentioned non-compliance with Pa.R.Crim.P. 720 constitutes a breakdown in the court's operation, and excuses Appellant's facially untimely notice of appeal. ***See Commonwealth v. Patterson***, 940 A.2d 493, 499 (Pa. Super. 2007) ("[T]he trial court's failure to comply with Rule 720 constitutes a breakdown that excuses the untimely filing of [a]ppellant's notice of appeal."); ***see also*** Pa.R.A.P. 903(a) (a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken.").

the credibility of witnesses, and believe all, part, or none of the evidence submitted." ***Commonwealth v. Sanchez***, 82 A.3d 943, 972 (Pa. 2013); ***see also Commonwealth v. Norton***, 201 A.3d 112, 121 (Pa. 2019) ("[W]hen appellate review involves the trial court's findings of fact and credibility determinations, those findings are binding on the reviewing court if they find support in the record[.]" (citation omitted)).

> In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Peters***, ___ A.3d ___, 2024 PA Super 171, at **11-12 (Pa. Super. filed Aug. 7, 2024) (*en banc*) (citation omitted).

"The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Smith***, 206 A.3d 551, 557 (Pa. Super. 2019) (citation omitted; emphasis added); ***see also Commonwealth v. Arrington***, 86 A.3d 831, 840 (Pa. 2014) (same). "[T]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence[,] coupled with the reasonable inferences drawn therefrom[,] overcomes the presumption of innocence." ***Commonwealth v. Sebolka***, 205 A.3d 329, 337 (Pa. Super. 2019) (citation omitted). "Although a conviction must be based on more than mere suspicion

or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa. Super. 2013) (citation omitted).

> The facts and circumstances need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the [fact-finder] unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn f[ro]m the combined circumstances.

*Commonwealth v. Whitacre*, 878 A.2d 96, 99 (Pa. Super. 2000) (*en banc*) (citation omitted).

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes."[13] *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted). It is settled that "[e]**vidence of identi**[**ty**] **need not be positive and certain to sustain a conviction**." *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (emphasis added; citation omitted).

> [E]ven if the Commonwealth presented only circumstantial evidence and offered no positive identification of the assailant, we may not weigh the evidence and substitute our judgment for the fact-finder as long as the evidence was sufficient to prove [the accused's] guilt.

*Commonwealth v. Robertson*, 874 A.2d 1200, 1206 (Pa. Super. 2005).

In *Orr*, this Court further explained:

---

[13] Here, the only element that Appellant challenges is his identity as the perpetrator.

- 11 -

> Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. *Commonwealth v. Minnis*, 458 A.2d 231, 233-34 (Pa. Super. 1983). … Given additional evidentiary circumstances, "any indefiniteness and uncertainty in the identification testimony goes to its weight." *Id.* at 233.

*Orr*, 38 A.3d at 874 (some citations modified).

Instantly, Appellant claims the Commonwealth failed to adduce sufficient evidence to prove his identity as the perpetrator beyond a reasonable doubt. *See* Appellant's Brief at 8-13. Appellant argues, "while witness testimony established that [Appellant] was with [the victim] shortly before the killing, there was no testimony that [Appellant] was seen in possession of a firearm on the day of the killing." *Id.* at 9. Appellant claims the trial court improperly overlooked "evidence [that] identifies [] Brownfield as a potential alternative suspect in this case." *Id.* at 10. Appellant emphasizes the defense presented evidence that Brownfield sent the victim a text message, three days before the murder and in violation of a PFA order, wherein Brownfield stated he "hates [the victim's] guts." N.T., 8/29/22, at 77. *See* Appellant's Brief at 10; *see also id.* at 9 (asserting the "underlying incident of abuse that triggered the PFA [o]rder involved a weapon." (citation omitted)).

Appellant argues the "circumstantial evidence [did not] prove[] to **a moral certainty** that [Appellant] was the perpetrator of this killing." *Id.* at 8 (emphasis added) (citing *Commonwealth v. Bybel*, 611 A.2d 188, 189

- 12 -

(Pa. 1992)).[14] Appellant claims, "[t]his case is arguably analogous to the Supreme Court's decision in … ***New***," which we address below. Appellant's Brief at 10; ***see also id.*** at 10-12 (analyzing ***New***).

The Commonwealth counters it proved Appellant's identity as the perpetrator beyond a reasonable doubt; thus, his convictions are supported by sufficient evidence. ***See*** Commonwealth Brief at 13-19. "[W]hile it is true that there was no eyewitness who saw [Appellant] shoot the victim in the head, it is well settled that the Commonwealth may sustain its burden of proving" the perpetrator's identity "by means of wholly circumstantial evidence." ***Id.*** at 13 (citing ***Arrington***, *supra*). The Commonwealth emphasizes the following evidence:

- The medical examiner who performed the victim's autopsy testified her wounds "were consistent with the shooter having been in the passenger seat of the [] vehicle." ***Id.*** at 15;

- Police investigation of the vehicle revealed Appellant's fingerprint was on the passenger door handle, and his cell phone was found in the vehicle. ***Id.*** at 16;

_____

[14] The ***Bybel*** Court cited our Supreme Court's earlier decision in ***Commonwealth v. Woong Knee New***, 47 A.2d 450 (Pa. 1946), for the following proposition:

The requirement of the law is that in order to warrant a conviction the facts and circumstances proved must be of such character as to produce a **moral certainty** of the guilt of the accused beyond any reasonable doubt….

***Bybel***, 611 A.2d at 189 (emphasis added) (quoting ***New***, 47 A.2d at 455 (citation omitted)).

- Several residents of Davidson Street who heard the vehicle crash testified they saw a black male, who had dreadlocks and wore dark clothing, running from the scene. *Id.* at 15;

- Two video surveillance cameras located nearby the scene "depicted an individual wearing a dark-colored hoodie … and distinctive black and white sneakers…." *Id.* at 16;

- Ms. Bowers testified that approximately an hour prior to the murder, she had seen Appellant and the victim enter the vehicle, "with [Appellant] as [the] lone passenger[,]" and Appellant was wearing a black hoodie and had dreadlocks. *Id.* at 14, 16;

- Surveillance video taken at Giant Eagle earlier on the day of the murder depicted Appellant "wearing a black[,] hooded sweatshirt as well as [] distinctive shoes with black on the bottom and a large amount of white on top…." *Id.* at 16.

Finally, the Commonwealth argues the trial court acted within its purview as fact-finder in rejecting Appellant's theory that Brownfield murdered the victim. *Id.* at 17 ("[N]ot only was there nothing offered that would indicate that Brownfield was in … [the vehicle] on this occasion (or that he knew [of the victim's] whereabouts), there was actually express evidence put forth at trial that Brownfield did not have dreadlocks on February 8, 2021….").

Preliminarily, we address Appellant's reliance on *New*, *supra*. Recently, this Court recently summarized the holding in *New*:

In *New*, our Supreme Court explained,

> [w]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty. When a party on whom rests the burden of proof in either a criminal or a civil case, offers evidence consistent with two opposing propositions, he

- 14 -

proves neither. [The Supreme Court has held that] [t]he evidence in this case was utterly insufficient **if submitted under adequate and proper instructions** to convince an intelligent and fair-minded jury of the defendant's guilt to a moral certainty so strong as not to be weakened or disturbed by any reasonable doubt.

*New*, 47 A.2d at 468 (emphasis added). In *New*, the Court reversed the defendant's judgment of sentence

(a) because the charge of the trial [c]ourt was so inaccurate and misleading, and (b) also because the Commonwealth's evidence was so weak and the evidence of alibi was so strong, [the Supreme Court] said: "The jury must also be instructed that 'the evidence in support of the alibi may, with other facts in the case, raise the reasonable doubt of guilt which entitled a defendant to acquittal.'" The opinion of [the Supreme] Court was predicated upon the failure of the trial [j]udge to "make it clear to the jury that the evidence as to an alibi may generate in the minds of the jury a reasonable doubt of the defendant's guilt." The trial [j]udge's charge in that case was filled with statements which, because of inaccuracy or ambiguity, were highly prejudicial….

*Commonwealth v. Richardson*, … 140 A.2d 828, 839 (Pa. 1958) (explaining *New*) (some punctuation modified, citations omitted).

Regardless of the validity of *New*,[FN] [a]ppellant cites no inaccuracies in the trial court's jury instructions. …

---

[FN] In *Commonwealth v. Martin*, … 142 A.2d 467 (Pa. [Super.] 1958), [this] … Court questioned the validity of *New* "to the effect that the evidence required to sustain the conviction must produce a moral certainty of the guilt of the accused beyond a reasonable doubt." *Id.* at 4[69].

The language of … the whole line of cases on which the moral certainty doctrine was based, have been repudiated by the courts of this Commonwealth, and it is now clearly established that the moral certainty test has no place in the criminal law of Pennsylvania….

*Id.* …

***Commonwealth v. Ferrante***, 313 A.3d 176, 862 WDA 2022 (Pa. Super. filed Jan. 12, 2024) (unpublished memorandum at 30-31)[15] (footnote in original).

In the instant case, as in ***Ferrante***, Appellant "cites no inaccuracies in the trial court's jury instructions." *Id.* (unpublished memorandum at 31). Thus, we disagree with Appellant's claim that ***New*** is "arguably analogous[.]" Appellant's Brief at 10. Moreover, our Supreme Court has instructed:

> The facts and circumstances proved must, in order to warrant a conviction, be such as to establish the guilt of the defendant, **not necessarily beyond a moral certainty**, nor as being absolutely incompatible with his innocence, but at least beyond a reasonable doubt.

***Int. of J.B.***, 189 A.3d 390, 408 (Pa. 2018) (citation omitted; emphasis added); ***see also id.*** at 409-13 (thoroughly analyzing ***New*** and its progeny). Thus, Appellant's claim the Commonwealth was required to prove his identity "to a moral certainty," Appellant's Brief at 8, is contrary to the law. ***J.B.***, 189 A.3d at 408; ***see also Martin***, 142 A.2d at 469.

In its Rule 1925(a) opinion, the trial court, as fact finder, determined the Commonwealth proved Appellant's identity as the perpetrator beyond a reasonable doubt:

> While no witness actually observed [Appellant] shoot [the victim], th[e trial] court believes that the circumstantial evidence was sufficient to identify him as the shooter in this case. The

---

[15] Pursuant to Pa.R.A.P. 126(b), unpublished non-precedential memorandum decisions of the Pennsylvania Superior Court filed after May 1, 2019, may be cited for their persuasive value.

evidence in this case established that [Appellant] and [the victim] were together at Giant Eagle on February 8, 2021[,] at approximately 12:40 p.m. Surveillance video discloses that [Appellant] was wearing a dark hooded sweatshirt, light-colored pants and he had dreadlocks that were hanging outside the hood. Later that day, when [Appellant entered] … the Fiesta with [the victim] at approximately 7:30 p.m., he [wa]s still wearing those clothes. **The eyewitnesses to the incident generally provide the same description of the person who fled the scene**[,] **and that description *matches what* [*Appellant*] *is wearing in the Giant Eagle surveillance video*. There is also evidence that shoes [Appellant] was wearing a week before the homicide** (Commonwealth Exhibit 46) **were the same shoes worn by the person fleeing the scene of the homicide** (black on top and white on the bottom). [Appellant's] cell phone and medical record were found in the Fiesta and his fingerprint was on the passenger door handle. ***There is no question* [*that Appellant*] *was in the Fiesta near the time of the murder*. [Appellant] had access to a firearm.** Two [bullet] casings were recovered from the inside of the vehicle. The evidence in this case proved beyond a reasonable doubt that **the shots that killed [the victim] came from inside the vehicle very near in time [to when Appellant] is confirmed to have been in the vehicle.**

Moreover, [Appellant's] explanation [in his police interview] of the events of February 8, 2021, was nonsensical. [Appellant] claimed that he wanted to go to Greensburg, Pennsylvania. However, [Appellant] claim[ed] he had [the victim] drop him off in Lawrenceville. These locations are far apart. [Appellant] refused to disclose who picked him up [i]n Lawrenceville and he refused to provide the address to which he was going in Greensburg. [**Appellant's**] **version of what actually occurred** [o]**n the evening of February 8, 2021, was totally self-serving and uncorroborated.** Th[e trial] court … believes that identification was proved beyond a reasonable doubt in this case.

Trial Court Opinion, 1/24/24, at 8-9 (emphasis and paragraph break added; some capitalization modified).

The trial court's findings are supported by the record, and we agree with its conclusion. ***See id.*** Moreover, the trial court, as fact-finder, was free to

- 17 -

"believe all, part, or none of the evidence," and it was solely the court's purview to "determine the credibility of witnesses," including Brownfield. *Sanchez*, 82 A.3d at 972. Viewed in the light most favorable to the Commonwealth, the circumstantial evidence was clearly sufficient to support the fact-finder's conclusion that Appellant was responsible for the victim's murder. *See*, *e.g.*, *Arrington*, 86 A.3d at 841 (rejecting appellant's sufficiency challenge to his convictions of first-degree murder and gun offenses, where "appellant had been romantically involved with [decedent; appellant] had beaten [decedent] on numerous occasions"; and decedent had been "shot [] in the neck during an altercation that occurred near the home of appellant's mother." (some capitalization modified)); *Whitacre*, 878 A.2d at 100 (holding circumstantial evidence was sufficient to establish beyond a reasonable doubt appellant's identity as murder perpetrator, where (a) police "identified [] two [bullet] shell casings found in [deceased's] residence as having been from a shotgun owned by appellant"; (b) "three witnesses saw a white pickup truck resembling the one owned by appellant in the vicinity of [decedent's] residence in the minutes both right before and right after the shootings"; and (c) "appellant was unhappy with the progress of his lawsuit against [decedent.]" (some capitalization modified)). Thus, Appellant's sufficiency challenge lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/28/2024